756 So.2d 180 (2000)
Kenya Renard COPELAND, Appellant,
v.
STATE of Florida, Appellee.
No. 2D98-4403.
District Court of Appeal of Florida, Second District.
April 5, 2000.
*181 Phyllis Diaz Chew and Edward M. Chew, Lakeland, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Acting Chief Judge.
Kenya Renard Copeland appeals his judgment and sentence for possession of cocaine following the denial of his dispositive motions to suppress evidence. Because the circumstances surrounding the stop and pat-down search in this case are almost indistinguishable from those presented in the recent United States Supreme Court's decision of Illinois v. Wardlow, ___ U.S. ___, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), we affirm.
On September 18, 1997, Lakeland police officers who were members of a drug task force set out in the late evening hours to patrol an area on North Ohio Street. Within the preceding week, the officers had received a tip that drug activity had increased in this vicinity, an area the officers described as a "high crime area." The three officers on patrol were in an unmarked patrol car and wore black fatigue uniforms, a badge, a gun belt, and a hat labeled "police." Around midnight, as the officers' car turned the corner onto Ohio Street, they saw a maroon Mustang automobile parked in front of a residence with a group of five or six people clustered around the driver's door. When they approached the vehicle, two or three people looked up and immediately fled the area. Mr. Copeland did not run, but instead began backing away from the officers, looking nervous. He positioned himself so that he was standing behind a woman, thus placing the woman between himself and the officers. Mr. Copeland also concealed his hands behind his back, leading at least one officer to be concerned that he might have a weapon.
Two of the officers immediately noticed Mr. Copeland's behavior and directed their attention toward him. One officer moved behind Mr. Copeland and held him in an "arm bar" while a second officer came up and conducted a pat-down search. During the pat-down, the officer felt what he believed from his experience to be cocaine. The officer thereafter removed a small plastic bag of cocaine from Mr. Copeland's pocket.
At the hearing on Mr. Copeland's motion to suppress, the State argued that Mr. Copeland's elusive behavior gave the officers both a founded suspicion of criminal activity to justify the stop and a reasonable suspicion that he was armed to justify the pat-down. Prior to the United States Supreme Court's opinion in Wardlow, 120 S.Ct. 673, we would have found that the stop violated Mr. Copeland's Fourth Amendment rights. See Stiffler v. State, 744 So.2d 1187 (Fla. 2d DCA 1999); M.J.S. v. State, 624 So.2d 359 (Fla. 2d DCA 1993); Hewlett v. State, 599 So.2d 757 (Fla. 2d DCA 1992); Dames v. State, 566 So.2d 51 (Fla. 1st DCA 1990). In Wardlow, however, the Supreme Court held that a stop under similar circumstances did not violate the Fourth Amendment. In that case, the defendant engaged in "headlong flight" when the officers approached. See Wardlow, 120 S.Ct. at 675. In this case, some of the participants engaged in similar flight. Mr. Copeland's conduct was not flight, but it was equally unusual, suspicious behavior. We can see no relevant distinction between the facts in Wardlow and the facts in this case.
Affirmed.
GREEN and CASANUEVA, JJ., Concur.